IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JUNE 15, 2000 Session

## IN THE MATTER OF: C.D.B., S.S.B. & S.E.B., MINOR CHILDREN

**Direct Appeal from the Juvenile Court for Montgomery County**
**No. 66-89; The Honorable L. Raymond Grimes, Judge**

_____

**No. M2000-00232-COA-R3-CV - Filed October 18, 2000**

_____

This case involves the termination of parental rights. Upon a petition filed by the Tennessee Department of Children's Services, the Montgomery County Juvenile Court entered a final decree terminating the Appellant's parental rights.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Gregory D. Smith, for Appellant

Paul G. Summers, Attorney General and Reporter, Douglas Earl Diamond, Assistant Attorney General, for Appellee

### OPINION

Denise Bagwell appeals from the decision of the Montgomery County Juvenile Court terminating her parental rights as to three of her minor children. For the reasons stated herein, we affirm the trial court decision.

### I. Facts and Procedural History

C.D.B., S.S.B. and S.E.B. are the minor children of Denise Rita Bagwell ("Appellant"). On October 12, 1994, the Tennessee Department of Human Services filed a petition for the temporary custody of the children.[1] The petition alleged, _inter alia_, that the children were filthy and unsupervised, medically neglected, developmentally delayed, physically abused, and living in a filthy

_____

[1] The pertinent facts in this case took place both before and after the split of the Department of Human Services and the Department of Children's Services. For the sake of simplicity, we shall refer to both Departments collectively as "the Department."

and dangerous home.[2] The petition claimed that the children were dependent and neglected pursuant to T.C.A. § 37-1-102 (10) (F),(G). On that same date, the Montgomery County Juvenile Court entered a protective custody order giving temporary custody of the children to the Department.

Helen Allen, a caseworker for the Department, testified regarding the circumstances which led to the removal of the Appellant's children. She testified that her department had previously received several referrals regarding the Bagwell children. Those referrals mostly involved chronic neglect and filthy living conditions. Ms. Allen testified to the numerous services which the Department had offered Ms. Bagwell, including a "homemaker" who was assigned to teach Ms. Bagwell how to take care of her home and children. These services had little, if any, success in improving Ms. Bagwell's parenting skills. Ms. Bagwell refused to find employment and attended few, if any, of the counseling sessions arranged for her. In short, Ms. Bagwell was not acting as a parent to her children, nor was she attempting to improve her situation.

After the children were removed, Danette Thigpen took over the case on behalf of the Department. Ms. Thigpen undertook a step-by-step review with Denise Bagwell detailing the latter's responsibilities. At this time, C.D.B. and S.S.B. were in a level two therapeutic foster home, which was necessitated by their sexual acting out and other problems. Ms. Thigpen testified that Ms. Bagwell was unable to comprehend or appreciate the numerous problems confronting her children. It was Ms. Thigpen's opinion that at the time the petition for termination was filed, Ms. Bagwell was no closer to having her children returned than when they were removed.

On April 28, 1997, Ms. Thigpen filed a petition to terminate Denise Bagwell's parental rights. On March 5, 1998, the trial court entered a final decree terminating the Appellant's parental rights. However, that decree was subsequently set aside.[3] On October 10, 1998, a meeting was held where a new plan of care, including many of the same responsibilities in the previous plan, was developed. Ms. Bagwell did not attend the meeting. A caseworker subsequently met with Ms. Bagwell and explained her responsibilities under the new plan of care.[4] Ms. Bagwell did not comply with the plan of care.

On July 15, 1999, this matter was heard in the Montgomery County Juvenile Court. The trial court heard testimony from various witnesses, including Ms. Bagwell, and made the following findings of fact:

---

[2] The petition also alleged that at least one of the children had been sexually abused.

[3] The record is not clear as to why the decree was set aside.

[4] Those responsibilities included: counseling, obtaining a GED, and attending parenting classes.

Based on the testimony of the witnesses here today and the party, Ms. Bagwell, report of the guardian *ad litem*, the Court does find that the children went into the custody of the state in August of '94 and been in state custody since that time, from the testimony of Mrs. Allen, a 26 year employee of the department, that testimony totally without notes I might add. During her many years of working with Ms. Bagwell and her children, the department's done everything humanly possible to help Ms. Bagwell.

In fact, as Ms. Allen stated, it was the most services provided to any one person in her 26 years in the department. And, during that time there was no demonstration by Ms. Bagwell that she had adopted any skill to parent to protect her children. Simply pursuing this action to terminate her or to persist in the termination of the parent rights in this Court is not enough.

Mrs. Allen testified that in 1996, two years after placing these children in foster care, Ms. Bagwell's home was still deplorable. She's demonstrated no way to support the children, did not attend counseling or therapy consistently.

The Court finds that a second case worker, Ms. Thigpen, began anew with Ms. Bagwell in 1996, and the new case worker's goal was to reestablish bonding and visitation. And during Ms. Thigpen's two years in dealing with Ms. Bagwell, she never felt comfortable sending these children home.

And although the new case worker, Ms. Thigpen, saw Ms. Bagwell's love for the children, she did not consistently do the things necessary - - that is, Ms. Bagwell, did not consistently do the things necessary to regain custody of the children. Failed to get a job, failed to get a GED, failed to get counseling.

Ms. Bagwell testified over and over I'm going to do this, I'm going to do this, I'm going to do this tomorrow. She's had two years before she came here today, yet she still hasn't accomplished those things.

The trial court found that the conditions which led to the removal were not likely to be remedied and that the possibility of physical, emotional, and sexual abuse still existed. Based on its factual finding, the court concluded that termination served the best interests of the children. By order dated January 6, 2000, the trial court terminated Ms. Bagwell's parental rights pursuant to T.C.A. § 36-1-113(g)(3)(A). This appeal followed.

## II. Law and Analysis

The decision to terminate parental rights involves fundamental constitutional rights. O'Daniel v. Messier, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995). Therefore, the court must find

that the grounds for termination of parental rights have been established by "clear and convincing evidence." See Tenn.Code Ann. § 36-1-113(c)(1) (1996); State Dept. of Human Servs. v. Defriece, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence." O'Daniel, 905 S.W.2d at 186.

Parental rights can be terminated in only a limited number of statutorily defined circumstances and then, only if a court determines that termination is in the child's best interests. See Tenn.Code Ann. § 36-1-113(c)(2) (1996). Parental rights may be terminated only when continuing the parent-child relationship poses a substantial threat of harm to the child. See Petrosky v. Keene, 898 S.W.2d 726, 728 (Tenn. 1995). As pertinent in this case, T.C.A. § 36-1-113 allows the termination of parental rights if: (1) the child has been removed from the home of the parent by court order for six months and (2) the conditions which led to the removal or other similar conditions still persist, are unlikely to be remedied in the near future, and the continuation of the parent-child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

The record in this case clearly supports the termination of the Appellant's parental rights under the applicable statutory authority. The trial court stated the basis for its decision as follows:

> [S]aid children have been removed from the custody of the Defendant, Denise Rita Bagwell, for more than six (6) months, and that the conditions which led to the removal of said children from said Defendant, and would in all reasonable probability cause said children to be further abused or neglected, still persist; that there is little likelihood that these conditions will be remedied in the near future; and, that said children are of such an age that the continuation of the legal parent and child relationship greatly diminishes said children's chances of early integration into a stable and permanent home. That the testimony reflects extensive services have been provided to the Defendant, Denise Rita Bagwell, that she had not made significant changes, that she has not attended counseling, or demonstrated the ability to support said children or to meet the needs of said children, which have increased significantly, all this despite on-going efforts by the caseworkers and the Court to impress upon her the need to make an effort and demonstrate a change in a timely manner.

The trial court recognized that Ms. Bagwell was provided every opportunity to make the necessary changes in her life. She made little, if any, effort to improve herself as a parent to her children. She did not complete parenting classes, never gained any long-term employment, never obtained a GED, and, most importantly, made only minimal efforts to visit with her children while they were in state care.[5] The fact is that Ms. Bagwell's most concerted effort in this entire process has been fighting the termination proceedings.

---

[5] The testimony clearly indicated that Ms. Bagwell sometimes slept while visiting her children.

The record clearly shows that the trial court's decision to terminate was supported by clear and convincing evidence. Likewise, we believe termination is in the best interests of the children. These children face significant problems. These problems are the result of deficiencies in Ms. Bagwell's ability to provide them with proper parenting. Removing the children from her care and custody presents them with their best chance at healthy and productive lives.

Finally, we note that Ms. Bagwell's primary argument before this court revolves around the fact that the Department has allowed a subsequently born child to remain in her care and custody. She argues that this fact proves her parenting skills have improved insofar as the Department would not otherwise allow the child to remain in her custody. In In re Baker, 1999 WL 1336044 (Tenn. Ct. App. 1999), we addressed a similar argument. In support of their claim that conditions had been improved, the parents in Baker pointed out that three children remained in the home after the children subject to the termination had been removed. In rejecting the parents' argument, we stated:

> We find this line of reasoning unpersuasive because the conditions of the two sets of children are not necessarily the same. The fact that the six children were removed from the home does not mean that the three remaining children should be removed. Similarly, the fact that three children remain in the home is not evidence that the other children should be returned. Each situation is independent of the other and should be judged as such.

The argument in the present case is exactly the same as the argument advanced by the parents in Baker. As in Baker, the argument is without merit.

**Conclusion**

For the aforementioned reasons, the decision of the trial court terminating the parental rights of Denise Bagwell is affirmed. Costs of this appeal are taxed to the Appellant, Denise Bagwell, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE